**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**REBECCA FUNK,**

                                   **Plaintiff,**

    **vs.**                                                        **1:10-CV-602**
                                                                  **(MAD)**

**MICHAEL J. ASTRUE, Commissioner of**
**Social Security,**

                                   **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

Office of Peter M. Margolius              Peter M. Margolius, Esq.
7 Howard Street
Catskill, NY 12414
*Attorney for Plaintiff*

Social Security Administration             Jason P. Peck, Esq.
Office of Regional General Counsel      Tomasina DiGrigoli, Esq.
Region II
26 Federal Plaza - Room 3904
New York, NY 10278
*Attorney for Defendant*

**Mae A. D'Agostino, U.S. District Judge:**

                                 **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Rebecca Funk, brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny her application for supplemental social security ("SSI") and disability insurance benefits ("DIB").

## II.     BACKGROUND

On September 7, 2006, plaintiff filed an application for SSI and DIB benefits. (Administrative Transcript at p.12).[1] Plaintiff was 29 years old at the time of the application with prior work history as a book scanner. (T. 20). Plaintiff claims she suffered from sleeping problems, seizures, fibromyalgia, migraine headaches, scoliosis and restless leg syndrome. (T. 14-16, 99). Plaintiff claimed to be disabled as of March 11, 2003. (T. 94). On February 6, 2007, plaintiff's applications were denied and plaintiff requested a hearing by an ALJ which was held on July 30, 2008. (T. 12). On September 3, 2008, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 12-22). The Appeals Council denied plaintiff's request for review on March 24, 2010, making the ALJ's decision the final determination of the Commissioner. (T. 1-3). This action followed.

## III.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 8.

2

> proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date, March 11, 2003. (T. 14). At step two, the ALJ concluded that plaintiff suffered from fibromyalgia, seizure disorder and migraine headaches which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 14). At the third step of the analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 16). The ALJ found that plaintiff had the residual functional capacity ("RFC") to, "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), which enables the claimant to sit for six hours in an eight-hour workday, stand or walk for two hours in an eight-hour workday, lift no more than 10 pounds and requires no exposure to moving machinery, hazards, heights or motor vehicles". (T. 16). At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. (T. 20). At step five, relying on the medical-vocational guidelines ("the grids") set forth in the Regulations,

3

20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 21). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 21).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ should have recontacted Dr. Amelita Balagtas for clarification or additional information; and (2) the RFC determination is not supported by substantial evidence. (Dkt. No. 10).

**A.     ALJ's Duty to Recontact Consultative Examining Physician**

An ALJ has an obligation to develop the administrative record, including, in certain circumstances, recontacting a source of a claimant's medical evidence, *sua sponte*, to obtain additional information. *Lukose v. Astrue*, 2011 WL 5191784, at *3 (W.D.N.Y. 2011) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The ALJ will obtain additional evidence if he/she is unable to make a determination of disability based on the current record. 20 C.F.R. § 404.1527(c)(3). The Regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3).

In this case, the ALJ found that plaintiff could perform sedentary work. Plaintiff alleges that the ALJ was obligated to recontact the consultative examiner because his opinion was not consistent with this assessment or with the demands of sedentary work. Specifically, plaintiff

4

argues that Dr. Balagtas' opinion that plaintiff had "moderate limitation in prolonged sitting" would preclude sitting for up to six hours in an eight-hour day.

On November 7, 2006, Amelita Balagtas, M.D. conducted an orthopedic evaluation at the request of the agency. Upon examination, plaintiff exhibited a normal gait, could heel/toe walk without difficulty, and needed no assistance changing or getting on/off the examining table. (T. 203). Plaintiff's grip was 5/5 bilaterally with tenderness at right upper forearm. Plaintiff displayed a full range of motion, flexion, extension, and rotation with no pain or spasm in the cervical area. (T. 203). Plaintiff's range of motion in her right shoulder was limited with tender points in right upper trapezius. Forward flexion of the lumbar spine was restricted at 80 degrees but flexion and rotation were full. Straight leg raising was negative bilaterally, there was no spasm but slight tenderness in the lumbar area. (T. 204). Tender points were noted in the hips and right knee with decreased sensation on the left thigh however, the lower extremity examination was otherwise normal. X-rays were taken and revealed no abnormality of the thoracic spine and no scoliosis. Dr. Balagtas diagnosed plaintiff with fibromyalgia and back pain. Dr. Balagtas opined that plaintiff would have, "moderate limitation in activities that require bending, lifting, prolonged sitting, and prolonged standing as well as walking". (T. 204).

The ALJ discussed this opinion and concluded:

> the claimant's treating physicians and Dr. Balagtas noted that the claimant did exhibit some limitation of motion and tenderness, which would actually impose some sort of limitations on the claimant's ability to perform work-related activities.
>
> Dr. Balagtas noted decreased range of motion, tenderness and decreased sensation. The findings of tenderness were also consistent with the findings of Dr. French.[2] Nevertheless, the ALJ concludes that the moderate limitations imposed by Dr. Balagtas would not, in fact,

---

[2] John R. French, M.D. was plaintiff's treating rheumatologist.

>preclude the claimant from sitting for up to six hours in an eight-hour workday, standing or walking for up to two hours in an eight-hour workday and lifting a maximum of 10 pounds". (T. 20).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "[S]edentary work generally involves up to two hours of standing or walking and up to six hours of sitting in an eight-hour workday." *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996). "The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). Restrictions in prolonged standing do not preclude plaintiff from performing the requirements of sedentary work, as sedentary work does not require heavy lifting, twisting, or prolonged standing. *Johnson v. Astrue,* 2009 WL 1650415, at *4 (W.D.N.Y. 2009) (the consultative physician opined that plaintiff had moderate limitation to prolonged standing). Moreover, a finding of a "moderate degree of disability" is consistent with the definition of sedentary work. *See Dowdy v. Barnhart*, 213 F.Supp.2d 236, 246 (E.D.N.Y. 2002). Here, plaintiff presents the conclusory argument that Dr. Balagtas' opinion that plaintiff suffers from a "moderate degree of disability", is "more than a slight limitation and would preclude sitting for up to six hours in an eight-hour workday". Plaintiff offers no legal support for that argument. Based upon the aforementioned caselaw, plaintiff's proposition is legally incorrect. Dr. Balagtas' assessments would not preclude plaintiff from performing sedentary work. Accordingly, the Court declines to remand this matter based upon this argument.

**B.     RFC Determination**

6

Plaintiff argues that substantial evidence does not support the ALJ's determination that plaintiff could perform sedentary work. Moreover, plaintiff claims that her migraine headaches are debilitating and prevent her from sustaining gainful employment.

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

As discussed, the ALJ has a duty to develop the record. This duty exists regardless of whether the claimant is represented by counsel. *Perez*, 77 F.3d at 47. "The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, 2008 WL 4287389, at *13 (N.D.N.Y. 2008). The caselaw in this Circuit is clear as courts have consistently held that if the record does not contain any Medical Source Statement ("MSS") or RFC Assessment from plaintiff's treating physician, the ALJ has a duty to contact plaintiff's treating physician in an attempt to obtain an assessment. *See Pitcher v. Barnhart*, 2009 WL 890671, at *14 (N.D.N.Y. 2009) (an MSS or RFC from the treating physician was important because the

7

ALJ granted the other physician's MSS "moderate weight," and the only other individual to assess Plaintiff's RFC was a disability analyst); *see also Hopper v. Comm'r of Soc. Sec.*, 2008 WL 724288, at *11 (N.D.N.Y.2008); *see also Dickson*, 2008 WL 4287389, at *13. This duty also includes advising the plaintiff of the importance of such evidence. *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004) ("[a]t a minimum, if the ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and suggest that she supplement the record or call her treating physician as a witness") (citation omitted). The Regulations provide that, "[t]he Commissioner should request an MSS from the claimant's treating physician if such a statement has not been provided. *Outley v. Astrue*, 2010 WL 3703065, at *4 (N.D.N.Y. 2010) (citing 20 C.F.R. § 416.912(d) (explaining that the Commissioner will "make every reasonable effort to help you get medical reports from your own medical sources, a medical report should include an MSS"). In decisions involving the ALJ's duty to obtain an MSS, courts frequently cite to Judge Spatt's explanation in *Peed v. Sullivan*:

> What is valuable about the perspective of the treating physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.

*Peed v. Sullivan*, 778 F. Supp 1241, 1246 (E.D.N.Y.1991).

"Although the regulation provides that the lack of such a [MSS] statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one." *Johnson v. Astrue,* 2011 WL 4348302, at *10 (E.D.N.Y. 2011) (citations omitted). The ALJ must request such a statement regardless of whether the record contains a complete medical history. *Id.* (citing

8

§ 404.1513(b)(6)).  The failure to contact the physicians constitutes a breach of the ALJ's duty to develop the record and provides a basis for remand.  *Lawton v. Astrue*, 2009 WL 2867905, at *16 (N.D.N.Y. 2009).

### 1. Treating Physicians

Dr. French, plaintiff's rheumatologist, treated plaintiff from February 2004 until October 2008.  Dr. French diagnosed plaintiff with fibromyalgia and consistently treated plaintiff for pain related to this impairment.  (T. 153-162; 229; 241-245; 254).  Dr. French also treated plaintiff for seizures (which plaintiff has suffered since age nine), migraine headaches, restless leg syndrome and "nonrefreshed sleep".  (T. 158).  Upon referral from Dr. French, plaintiff sought treatment with Loren Rosenthal, M.D. (Dutchess Neurology) from September 2004 until February 2007 for complaints of back pain, numbness in her lower extremities, difficulty sleeping, seizures and migraine headaches with nausea.  (T. 163-189).  Dr. Rosenthal conducted numerous diagnostic tests including EMGs, EEGs, MRIs and sleep studies and prescribed several medications including Depakote, Keppra, Dilantin, ReQuip and Klonopin.[3]  From March 2007 until August 2008, plaintiff also treated with Samuel Koszer, M.D. and Alexander Safarov, M.D. at Eriver Neurology of New York. (T. 233).   Plaintiff complained of seizures, unrelenting headaches and various nocturnal events including "jerking"and disorientation.  The doctors diagnosed plaintiff with seizure disorder (epilepsy), fibromyalgia and headaches.  The neurologists at Eriver

---

[3] Depakote is used in the treatment of manic episodes associated with bipolar disorder. *Dorland's Illustrated Medical Dictionary*, 497, 565 (31st ed. 2007). Keppra and Dilantin are anti-convulsants used to treat partial seizures in adults with epilepsy. *Id.* at 527, 992, 1046, 1452. Requip is a dopamine used to treat Parkinson disease. *Id.* at 1649, 1679.  Klonopin is administered orally and used in the treatment of panic disorders. *Id.* at 379, 1003.

conducted various diagnostic testing and prescribed several medications including Lyrica, Lamictal, Keppra, Topomax and Frova.[4]

### 2. Analysis

The record does not contain any MSS or RFC Assessment from any of plaintiff's treating physicians. In the decision, the ALJ summarized treatment records from Dr. French, Dr. Rosenthal, Dr. Koszer and Dr. Safarov but failed to acknowledge that the record did not include any MSS or RFC Assessment from these physicians. The ALJ made no efforts to contact any of the physicians to obtain an MSS or RFC Assessment. This error necessitates a remand.

Plaintiff had at least four treating physicians who treated her for fibromyalgia, seizures and migraine headaches, all of which the ALJ found to be "severe" impairments at Step Two of the analysis. These physicians are specialists in their respective areas of medicine and provided plaintiff with continuous treatment over the course of several years. The physicians' records contain the results of objective testing and extensive diagnostic testing. In addition, the physicians all provided numerous medications, some of which resulted in debilitating side-effects. Despite the extensive medical record, the ALJ inexplicably relied upon the one-time evaluations of two consultative physicians who examined plaintiff in November 2006. Given the nature of plaintiff's impairments and the fact that plaintiff claims her inability to work is due, in large part, to her migraine headaches, the opinions of her treating neurologists are important. *See Garrett v. Astrue*, 2007 WL 4232726, at *9 (W.D.N.Y. 2007) (case remanded because the ALJ found

---

[4] The record also contains treatment notes from Rajesh Shukla, M.D. Dr. Shukla was plaintiff's primary care physician and treated plaintiff for unrelated complaints. Lyrica is a medication used to relieve neuropathic pain and to relieve the pain of fibromyalgia. www.ncbi.nim.nih.gov/pubmedhealth/PMH0000327. Lamictal and Topamax are anti-convulsants used to treat partial seizures in adults. *Dorland's* at 1014, 1017, 1965. Frova is used to treat migraine headaches. www.frova.com (last visited February 6, 2012).

plaintiff's migraine headaches to be a severe impairment but failed to contact treating physician to obtain an RFC Assessment). Moreover, the Court has reviewed the transcript from the administrative hearing. At no time during the hearing did the ALJ advise plaintiff of the importance of obtaining this evidence. Moreover, plaintiff was not represented by counsel at the time of the hearing and thus, at the very least, the ALJ should have encouraged plaintiff to obtain an opinion from her treating physicians.[5]  *See Myers v. Astrue*, 2009 WL 2162541, at *3 (N.D.N.Y. 2009).

For the reasons stated above, substantial evidence does not support the ALJ's RFC determination. The ALJ committed reversible error when he failed to request a MSS or RFC Assessment from any of plaintiffs' treating physicians. *See Outley*, 2010 WL 3703065, at *4 (N.D.N.Y. 2010) (the ALJ erroneously relied upon the opinions of Dr. Ganesh, a consultative examiner and the opinion from a non-examining physician without attempting to further develop the record). Upon remand, the ALJ shall attempt to obtain functional evaluations from plaintiff's treating physicians and properly analyze the opinions of the treating physicians according to the Commissioner's Regulations.[6]

## IV. CONCLUSION

**IT IS HEREBY,**

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

---

[5] The record indicates that plaintiff was accompanied by "a non-attorney representative". (T. 12).

[6] The lack of any MSS or RFC assessment by the treating physicians precludes the Court from engaging in any analysis of the severity of plaintiff's migraines and whether this impairment prohibits plaintiff from performing work-related activities.

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: February 15, 2012
       Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge